UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| RUBY LEE MARIE FALGOUT | CIVIL ACTION |
| VERSUS | No. 21-1443 |
| ANCO INSULATIONS, INC., ET AL | SECTION: "J"(3) |

## ORDER & REASONS

Before the Court are two *Motions for Partial Summary Judgment on Defendant's Government Contractor Defense to Plaintiffs' State Law Claims* filed by Ronald John Falgout on behalf of his wife Ruby Lee Marie Falgout against Defendants, Huntington Ingalls Incorporated ("Avondale"); **(Rec. Doc. 113);** and against Hopeman Brothers and Liberty Mutual Insurance Company as Insurer of Wyane Manufacturing Company ("Hopeman," collectively with Avondale "Defendants"); **(Rec. Doc. 115)**. Avondale filed an opposition (Rec. Doc. 125), but Hopeman reached a settlement (Rec. Doc. 142) with Plaintiff of all claims before opposing the motion. Thus, the motion for partial summary judgment on Hopeman's defenses **(Rec. Doc. 115)** is moot. Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the remaining motion for partial summary judgment **(Rec. Doc. 113)** should be **GRANTED.**

## FACTS AND PROCEDURAL BACKGROUND

Ruby Lee Marie Falgout alleges that she contracted mesothelioma as a result of asbestos exposure by laundering her husband's work clothes. Her husband, Ronald

1

John Falgout, worked at Avondale's Bridge City, Louisiana shipyard from 1965 until 1979. Ruby Lee Marie Falgout died on August 12, 2022, and this Court substituted Ronald John Falgout as plaintiff.

Ronald was exposed to asbestos at Avondale shipyard when Hopeman employees cut and installed asbestos wall board for various federal Government ships and when Avondale insulators cut insulation and mixed cement to cover pipe insulation and valves. This work created visible dust that accumulated on his clothes. Asbestos materials were used pursuant to contracts between the United States Government (U.S. Navy, Coast Guard, and Maritime Administration) and Avondale, and a joiner contractor between Avondale and subcontractor Hopeman.

Plaintiff filed this suit against numerous parties in Orleans Parish on March 26, 2021 and filed the instant motions for partial summary judgment on September 21, 2022, requesting Oral Argument. Avondale filed an Opposition on September 28, 2022, but Hopeman and Plaintiff reached a settlement agreement on October 7, 2022. Oral Argument is scheduled for October 19, 2022, at 9:30 a.m.

## **PARTIES' ARGUMENTS**

The parties disagree on both what the elements of the government contractor defenses are, and whether Defendant can satisfy all the elements. Plaintiff's argument in the motion for partial summary judgment is that Avondale is not entitled to use the "government contractor" defense based on the United States Supreme Court's decisions in *Yearsley v. W.A. Ross Construction Company*, 309 U.S. 18 (1940) and *Boyle v. United Technologies Corporation*, 487 U.S. 500 (1988). Plaintiff

2

contends that, because the tortious conduct in this case (failure to warn of hazards and failure to prevent the spread of asbestos) was discretionary or was not specifically approved by the government, the defense does not apply. In addition to Supreme Court and Fifth Circuit precedent, Plaintiff relies on two recent asbestos cases from other sections in this court: *Adams v. Eagle, Inc.*, No. 21-cv-694, 2022 WL 4016749 (E.D. La. Sept 2, 2022) and *Broussard v. Huntington Ingalls, Inc.*, No 20-cv-836, 2021 WL 5448795 (E.D. La. Nov. 22, 2021). In *Adams* and *Broussard*, the courts held that Avondale was not entitled to use the government contractor defenses against claims that they failed to warn and to prevent the spread because (1) there was no conflict between state and federal law, (2) the contracts with the government did not show any government specification requiring Avondale to warn or refrain from warning their employees about asbestos, (3) the government contracts do not provide a precise specification regarding the use and storage of asbestos, and (4) the negligence occurred "wholly outside" the government contracts. (Rec. Doc. 113-1, at 2-3).

Avondale's opposition urges this Court to decline to follow *Adams* and *Broussard*. Avondale argues that it is entitled to use the *Yearsley* defense because the government conferred authority on it to construct the vessels, and Avondale complied with the government's affirmative terms and provisions of the contract. (Rec. Doc. 125, at 15-16). Avondale also argues that it should be able to present the *Boyle* defense because it built vessels under contracts that required the use of asbestos and that provided certain asbestos safety measures and because Avondale did not have

3

any hazard information about asbestos that the government did not. (Rec. Doc. 125, at 27-29).

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56); *see Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.,* 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not

4

persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue for trial. *See id.* at 325; *Little*, 37 F.3d at 1075.

## DISCUSSION

Plaintiff seeks partial summary judgment on whether Defendant can claim immunity using the *Boyle* and *Yearsley* government contractor defenses to her state law claims: that Defendant failed to warn workers of the health hazards of asbestos and failed to implement controls preventing the spread of asbestos dust.

### I. The Government Contractor defense under *Boyle*: "the Government made me do it."[1]

The *Boyle* government contractor defense provides immunity from state law tort claims for certain government contractors for product design defects when "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States

---

[1] *In re Katrina Canal Breaches Litig.*, 620 F.3d 455, 465 (5th Cir. 2020).

about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle*, 487 U.S. at 512. Based on the "discretionary function" exception to the Federal Tort Claims Act, the *Boyle* defense protects against the financial burden of liability judgments against government contractors, which would be passed through to the United States government. *See Bailey v. McDonnell Douglas Corp.*, 989 F.2d 794, 798 (5th Cir. 1993) (quoting *Boyle*, 487 U.S. at 511). The *Boyle* Court explained that the first two elements "assure that the design feature in question was considered by a Government officer, and not merely by the contractor," and that the third element encourages manufacturers to disclose their knowledge of risks. *Boyle*, 487 U.S. at 512.

The Fifth Circuit applied the *Boyle* defense to failure to warn claims in *Jowers v. Lincoln Electric Company*. 617 F.3d 346 (5th Cir. 2010). In *Jowers*, the plaintiff was a welder for Ingalls and inhaled manganese fumes while welding, and the defendant tried to use the *Boyle* government contractor defense. *Id.* at 351. The *Jowers* court explained that, for failure to warn claims, the first element of the *Boyle* defense (reasonably precise specifications) requires that the government must have exercised discretion by meaningfully participating in the drafting of the warning. *Id.* at 353 (quoting *Trevino v. Gen. Dynamics Corp.*, 865 F.2d 1474, 1479–81 (5th Cir.1989) (internal quotations omitted). Specifically, the government must have "actually chose[n] a warning through its discretion," rather than "rubber stamped the contractor's decisions." *Id.* (quoting *Trevino*, 865 F.2d at 1480). The second element requires the contractor to provide warnings about the relevant danger that conforms

6

with federal government specifications. *Id.* at 354 (noting that contractor added language about avoiding excessive or concentrated fumes, language that weakened the warnings and caused them to fall below the government-required minimum warning). The third *Boyle* element requires the defendant contractor to have warned the federal government about dangers known to the defendant but not to the government. *Id.* at 352. The *Jowers* court held that, because the contractors did not present testimony that they shared their "deeper knowledge of potential harms" with the government, the third element was also not satisfied. *Id.* at 354-355. In sum, the *Boyle* defense for failure to warn claims requires three elements: "(1) the federal government exercised discretion and approved warnings for the product; (2) the warnings the defendant provided about the product conformed to the federal government specification; and (3) the defendant warned the federal government about dangers known to the defendant but not the government." *Id.* at 352.

More recently, two other sections of the Eastern District of Louisiana evaluated the government contractor defense in the context of a failure to warn claim for asbestos injuries. In *Broussard v. Huntington Ingalls, Inc.*, a plaintiff sued her husband's employer, Avondale, for failure to warn and failure to prevent the spread of asbestos after she developed mesothelioma from laundering her husband's clothing. *Broussard*, 2021 WL 5448795, at *1 (J. Lemmon). There was no evidence that the government was involved in the decision to give or not give warnings to Avondale employees nor was there evidence that the contracts constrained Avondale from issuing warnings. *Id.* at *3. Thus, the court granted the plaintiff's motion for

7

summary judgment, holding that Avondale could not avail itself of the government contractor defense against the plaintiff's failure to warn claim. *Id.*

Last month, in *Adams v. Eagle, Inc.*, under similar facts, the court held that the plaintiff was entitled to summary judgment that *Boyle* does not provide Avondale with a defense to plaintiff's failure to warn and failure to prevent the spread claims. 2022 WL 4016749, at *4 (J. Morgan). First, with respect to the failure to warn claim, the parties in *Adams* confirmed at oral argument that the federal government did not instruct Avondale to issue or refrain from issuing warnings to employees about the danger of asbestos. *Id.* at *7. Although government design specifications requiring Avondale to use asbestos would shield a contractor from liability for a design defect under *Boyle*, the *Adams* court emphasized that for a failure to warn claim under *Jowers*, Avondale must demonstrate "the existence of a government specification even remotely requiring Avondale to give or not to give its employees warnings." *Id*.

Second, for the *Adams* plaintiff's claim that Avondale failed to prevent the spread of asbestos, the court explained that Avondale must satisfy the first element of its *Boyle* defense by proving the government exercised its discretion in approving reasonably precise specifications for using and storing asbestos. *Id.* at *8. Avondale's contracts with the government incorporated the Walsh Healy Act, which expresses "certain minimum safety and health standards" but does not relieve contractors of their "duty to comply with stricter standards." *Id.* (citing 41 U.S.C. § 35(c) (1958) and 41 C.F.R. § 50-204.1 (e) (1965)). Relying on *Trevino v. General Dynamics Corporation*, where the Fifth Circuit determined the first element of the *Boyle* defense was not

satisfied when the government specification at issue only requires compliance with minimal or general standards, the *Adams* court held that Avondale was not entitled to the government contractor defense on the claim for failure to prevent the spread of asbestos as well. *Id.* at *9 (citing Trevino v. General Dynamics Corp., 865 F.2d 1474, 1480-87 (5th Cir. 1989) (holding that the approval element of the defense was not satisfied when the Navy was silent on the use of warning or safety devices, and those determinations were left to the discretion of the contractor)).

### a. Failure to warn claim

In the present motion, Plaintiff contends that Avondale will be unable to produce evidence demonstrating the existence of a government specification regarding asbestos warnings—the first element of a *Boyle* defense to a failure to warn claim. (Rec. Docs. 113-1, at 14; 115-1, at 18). Avondale argues that it has a viable government contractor defense because it can satisfy all three elements of the defense as articulated in *Boyle*. (Rec. Doc. 125, at 25), Specifically, Avondale contends that the first element of the *Boyle* defense only requires it to demonstrate that the government required the use of asbestos and compliance with the Walsh Healey safety standards and Department of Labor regulations. *Id.* at 26. Avondale also argues that, as long as the government exercised discretion regarding warnings and protocols in connection to the performance of government contracts, that exercise of discretion is sufficient to bring a failure to warn claim within the scope of a *Boyle* defense. *Id.* at 30 (citing *Kerstetter v. Pacific Scientific Company*, 210 F.3d 431, 438 (5th Cir. 2000) (holding that the Navy's supervision meetings and testing of a

9

defective buckle was a reasonably precise specification for the first element of a *Boyle* defense for a design defect claim)).

However, Avondale's argument misstates how to apply the *Boyle* requirements to failure to warn cases like this one, rather than to design defect claims. As the Fifth Circuit explained in *Jowers*, for a defendant to avail itself of the *Boyle* defense for a failure to warn claim, they must provide evidence of a government decision on the specific issue of a warning. As the party raising the defense, Avondale has not carried its burden to demonstrate the existence of a government specification requiring it to provide or not provide warnings to its employees about asbestos. "Simply put, issuing a warning would not have required a departure from the government's specifications." *Broussard*, 2021 WL 5448795, at *3. Thus, Avondale will be unable to prove the first element of its government contractor defense to Plaintiff's failure to warn claim, and summary judgment is appropriate.

### b. Failure to prevent the spread of asbestos claim

Plaintiff also seeks summary judgment that Avondale is not entitled to use the *Boyle* defense to her claims that it failed to implement engineering controls and industrial hygiene measures to prevent the uncontrolled spread of asbestos. (Rec. Doc. 113-1, at 1). Again, Plaintiff's argument hinges on whether Avondale can provide evidence of the first element of the government contractor defense. (Rec. Doc. 113-1, at 2).

The first element of the defense for a failure to prevent the spread of asbestos claim requires that the government exercised its discretion in approving reasonably

precise specifications for preventing the spread of asbestos. *Adams*, 2022 WL 4016749, at * 8 (noting that the Fifth Circuit has not squarely applied *Boyle* in the context of a claim for failure to properly use and store asbestos, but the rationale of *Boyle, Jowers,* and *Broussard* applies equally to this type of claim). Here, Avondale first contends that its government contracts provided reasonably precise specifications because the contracts incorporate the Walsh Healey Act and Department of Labor Safety and Health Regulations, which "render[ed] safe" their asbestos practices. (Rec. Doc. 125, at 32 (citing Rec. Doc. 121-14, at 4-5)). Second, Avondale cites two potential illustrations of the government exercising its discretion: the fact that the government did "*not* include additional safety measures that Plaintiffs demand" and the government's decision to continue awarding contracts to Avondale. Id. at 33-34.

When viewed in light of Fifth Circuit precedent requiring more than minimum safety and health standards to meet the reasonably precise specification requirement under *Boyle*, Avondale's examples of government discretion are unpersuasive. Accordingly, because the contracts at issue here only include a minimum safety and health standard and because Avondale has not provided any evidence that the government exercised discretion in approving more precise specifications for its use and storage of asbestos, the first element of Avondale's defense under *Boyle* has not been met. Therefore, summary judgment is appropriate on Avondale's use of the *Boyle* defense to plaintiff's failure to prevent the spread of asbestos claim.

## II. The Government Contractor defense under *Yearsley*: "derivative sovereign immunity" for government contractors[2]

Plaintiff also argues that Avondale should not be entitled to use the *Yearsley* government contractor defense to her state law claims. The *Yearsley* defense shields government contractors whose work was (1) authorized and directed by the Government of the United States and (2) performed pursuant to an Act of Congress. *Taylor Energy Co., L.L.C. v. Luttrell*, 3 F.4th 172, 175 (5th Cir. 2021) (internal citations and quotation marks omitted). The rationale behind the *Yearsley* defense is that there is "no ground for holding [the government's] agent liable who is simply acting under the authority thus validly conferred;" *Yearsley v. W.A. Ross Const. Co.*, 309 U.S. 18, 21 (1940); however, an agent of the government can be liable for his conduct if he exceeds his authority or if the authority was not validly conferred; *id.* at 22. In the present case, the parties disagree on the first element of the *Yearsley* defense: whether the government authorized and directed Defendants not to warn, provide protection, or implement decontamination protocols. (Rec. Docs. 113-1, at 27; 125, at 15).

In *Taylor Energy v. Luttrell*, the Fifth Circuit recently explained the appropriate inquiry for the first element of the *Yearsley* defense: whether the contractor adhered to the government's instructions as described in the contract documents. 3 F.4th at 176 (citing *In re KBR, Inc., Burn Pit Litig.*, 744 F.3d 326, 345 (4th Cir. 2014) ("[T]he contractor must adhere to the government's instructions to

---

[2] *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016).

enjoy derivative sovereign immunity; staying within the thematic umbrella of the work that the government authorized is not enough to render the contractor's activities the act[s] of the government.")). In that case, the government directed a contractor to develop a procedure, and then the government authorized the plan, design, and installation of the system to clean up an oil spill. *Id.* Because the contractor adhered to the government's specific expectations and due dates for the contractor's work, the court held that there was no material factual dispute about the government's authorization and direction over the work. *Id.*; *see also In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on Apr. 20, 2010*, No. MDL 2179, 2016 WL 614690, at *9 (E.D. La. Feb. 16, 2016) (finding that defendants sufficiently demonstrated they did not exceed or disobey the authority conferred by the federal government in connection with the response operations to an oil spill, so defendants were entitled to Yearsley derivative immunity).

Moreover, if a plaintiff attacks a government contractor's own separate negligent acts, rather than a government policy, *Yearsley* does not provide a defense to the negligence claims. *Adams*, 2022 WL 4016749, at *11. In *Ackerson v. Bean Dredging, LLC*, the plaintiffs sued government contractors who dredged wetlands in the Mississippi River Gulf Outlet, alleging that the MRGO project increased the region's vulnerability to hurricanes and created an environmental disaster. 589 F.3d 196, 207 (5th Cir. 2009). In holding that *Yearsley* applied to immunize the contractor acting under the government's policy, the Fifth Circuit specifically noted that

*Yearsley* would not apply to a separate act of negligence by the contractor defendants. *Id.*

The Adams court considered the history of the Fifth Circuit's "separate act of negligence" rule, including out-of-circuit courts relying on Ackerson. *See Adams*, 2022 WL 4016749, at *12. In the absence of additional guidance from the Fifth Circuit, the analysis in *Adams* is persuasive here and summarized as: government contractor negligence (1) constitutes an act separate from acts that the government authorized and (2) renders the *Yearsley* defense inapplicable. *See id.* (citing *Cabalce v. VSE Corp.*, 922 F.Supp. 2d 1113 (D. Hawaii 1/13/2013); *In re Fort Totten Metrorail Cases Arising out of the Events of June 22, 2009 ("Fort Trotten")*, 895 F.Supp. 2d 48 (D.D.C. 9/5/12)).

In the present case, as in *Adams*, Plaintiff claims that Avondale negligently carried out its government contracts that required the use of asbestos. However, Avondale's warnings, storage, and safety policies regarding asbestos are acts separate from the act that the government authorized: the use of asbestos in building government ships for the United States military. Derivative sovereign immunity does not shield against negligence separate from acts authorized by the government. Therefore, this Court also finds *Yearsley* is not applicable to Plaintiff's failure to warn and failure to prevent the spread of asbestos claims, and summary judgment is appropriate.

Accordingly,

## CONCLUSION

**IT IS HEREBY ORDERED** that the motion for partial summary judgment against Hopeman (Rec. Doc. 115) is **DENIED AS MOOT.**

**IT IS FURTHER ORDERED** that the motion for partial summary judgment against Avondale (Rec. Doc. 113) is **GRANTED.** Avondale may not use the government contractor defenses.

**IT IS FURTHER ORDERED** that the Oral Argument scheduled for October 19, 2022 is hereby cancelled.

New Orleans, Louisiana this 12th day of October, 2022.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE